UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STELLA BEATRIZ DURAN,<br><br>                     Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:16-cv-00543-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION FOR AN AWARD OF BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for an award of benefits.

FACTUAL AND PROCEDURAL HISTORY

On April 19, 2007, plaintiff filed applications for disability insurance and SSI benefits, alleging in both applications that she became disabled beginning February 16, 2007. Dkt. 9, Administrative Record (AR), 76, 742. Both applications were denied on initial administrative review and on reconsideration. AR 742. At a hearing held before an Administrative Law Judge (ALJ), plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. AR 23-75.

ORDER - 1

In a decision dated July 21, 2009, the ALJ found plaintiff could perform jobs existing in significant numbers in the national economy and therefore was not disabled. AR 14-21. After the Appeals Council denied plaintiff's request for review, plaintiff appealed the ALJ's decision to this Court, which reversed and remanded it for further administrative proceedings on March 29, 2011. AR 1, 879-906.

A second hearing was held before a different ALJ on remand, at which plaintiff, represented by counsel, appeared and testified, as did a different medical expert and a different vocational expert. AR 786-808. In a decision dated July 24, 2012, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy and thus that she was not disabled prior to March 1, 2010, but that beginning on that date her systemic lupus erythematosus (SLE) met the criteria for listing-level severity, and therefore she was disabled as of that date. AR 915-24.

On February 1, 2015, the Appeals Council granted plaintiff's request for review of the ALJ's decision, and remanded the matter for further administrative proceedings concerning the period prior to March 1, 2010. AR 935-37. A third hearing was held before the same ALJ, at which plaintiff, represented by counsel, appeared and testified, as did a different vocational expert. AR 764-85. At this and each of the two prior hearings, an interpreter also appeared and translated for plaintiff.

In a decision dated December 17, 2015, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy and thus that she was not disabled from March 5, 2007, to April 30, 2009, but that from May 1, 2009, to February 28, 2010, no jobs existed in significant numbers in the national economy that plaintiff could perform, and therefore that she was disabled as of May 1, 2009. AR 742-54. It does not appear from the record that the

ORDER - 2

Appeals Council assumed jurisdiction of the case, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.984, § 416.1484.

On April 27, 2016, plaintiff's complaint seeking judicial review of the Commissioner's final decision was filed in this Court. Dkt. 3. Plaintiff seeks reversal of the ALJ's decision that she was not disabled during the closed period of March 5, 2007, to April 30, 2009, and remand for an award of benefits, arguing the ALJ erred:

(1) in evaluating the medical evidence in the record concerning plaintiff's manipulative limitations, including the testimony of Wil Nelp, M.D., the medical expert at the second hearing;

(2) in evaluating the opinion evidence from Dr. Robert Velasco, Jr., Philip Buenvenida, M.D., Iftikhar Chowdhry, M.D., Dr. William Spence (the medical expert at the first hearing), Victoria McDuffee, Ph.D., Marc Avery, M.D., and Alysa Ruddell, Ph.D.;

(3) in discounting plaintiff's credibility;

(4) in assessing plaintiff's residual functional capacity (RFC); and

(5) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the evidence in the record concerning plaintiff's ability to handle, finger, and feel, and the opinion evidence from Dr. Buenvenida, and Dr. McDuffee. Because of those errors, the ALJ erred as well in assessing plaintiff's RFC and in finding she could perform other jobs. Also for the reasons set forth below, the Court finds remand for an award of benefits for the closed period is warranted.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

ORDER - 3

*see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d

ORDER - 4

595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of*

ORDER - 5

*Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

> A.     Plaintiff's Manipulative Limitations

The ALJ found that for the period of March 5, 2007, to April 30, 2009, plaintiff could frequently handle, finger, and feel, but that as of May 1, 2009, she could only do so occasionally. AR 747, 751. Plaintiff argues the ALJ failed to adequately explain why she was able to perform these tasks frequently prior to May 1, 2009, but not thereafter. The Court agrees.

In support of her argument, plaintiff relies on the testimony of Dr. Nelp that for at least six months prior to March 2010, plaintiff would be restricted to a less than sedentary level of work with additional "significant restrictions," including problems with her hands involving gross and fine manipulation. AR 803-05. Dr. Nelp also testified that it was "reasonable" that the "level of inability to function would have extended back to the [alleged onset date of disability] of March of 2007." AR 805.

With respect to Dr. Nelp's testimony, the ALJ found:

> I have assigned significant evidentiary weight to Dr. Nelp's expert testimony indicating that the claimant was limited to sedentary exertion (with overhead reaching, manipulative, postural, and environmental limitations) dating back to the amended alleged disability onset date, that her condition gradually worsened restricting her to less than sedentary exertion for at least six months prior to March 2010, and that her lupus was of listing level severity beginning March 2010 (May 2012 ME testimony). Dr. Nelp's opinion is consistent with the claimant's longitudinal treatment history and her gradually deteriorating condition since she was diagnosed with SLE in 2007. The evidence does not warrant more restrictive upper extremity or manipulative limitations prior to

ORDER - 6

May 2009.

AR 749. The ALJ, however, fails to explain why he believed the evidence did not warrant more restrictive manipulative limitations prior to May 2009.

The record, furthermore, demonstrates plaintiff is far more restricted in her manipulative capabilities than the ALJ found. As noted above, Dr. Nelp testified that plaintiff had significant restrictions in terms of gross and fine manipulation for at least six months prior to March 2010. Dr. Nelp's additional testimony regarding plaintiff's level of inability to function extending back to March 2007 – though not specifically linked to plaintiff's manipulative capabilities – certainly suggest that he thought such might be the case.

Other medical opinion evidence in the record also supports this suggestion. In July 2007, Dr. Buenvenida opined that plaintiff was limited in regard to pushing and pulling. AR. 626. In March 2008, he found her to be limited with respect to repetitive motion. AR. 624. In February 2009, Dr. Buenvenida examined plaintiff and found her to be severely limited in her ability to handle, meaning she could not perform that activity, based on diagnoses of rheumatoid arthritis and SLE. AR 667. In terms of objective findings, Dr. Buenvenida noted pain and tenderness in plaintiff's hands, wrists, and elbows, as well as tender bilateral reflexes. AR 666. Dr. Buenvenida obtained similar findings in December 2009, again opining that plaintiff was severely limited in terms of those two diagnoses, though not specifically in regard to any enumerated manipulative or other functional activities. AR 1353-54. Dr. Buenvenida nevertheless did indicate plaintiff was restricted in regard to handling, pushing and pulling. AR 1354.

The ALJ assigned "little weight" to Dr. Buenvenida's opinions, because the record shows plaintiff's respiratory/cardiac symptoms improved in February/March 2007. AR 749-50. But as plaintiff points out, Dr. Buenvenida did not base his opinion on those symptoms. The ALJ goes

ORDER - 7

on to state that the RFC assessment accounts for plaintiff's SLE "and other severe impairments, but her symptoms were largely stable and fairly controlled in April 2009." *Id.* First, even if her symptoms could be said to have been stable and fairly controlled in April 2009, the ALJ made no determination as to their level of severity for the more than two-year period prior thereto at issue in this case. Second, Dr. Buenvenida's December 2009 findings strongly indicate that plaintiff's symptoms continued to be a problem for her.

The ALJ's decision contains no other discussion of plaintiff's manipulative limitations or why he believed her ability to handle, finger, and feel deteriorated after April 30, 2009, but not beforehand. Indeed, both Dr. Nelp's testimony and Dr. Buenvenida's findings strongly suggest plaintiff effectively had no ability to engage in handling and/or gross or fine manipulation during the closed period at issue here. At the very least, the ALJ has failed to support his determination that plaintiff was able to perform such activities at a greater than occasional level during but not after that period. As discussed below, this error alone supports remand for benefits.

B.   Dr. Buenvenida

In July 2007, Dr. Buenvenida opined that plaintiff was limited to sedentary work, with additional restrictions of no more than 10 hours a week of lifting, pulling, pushing, walking, and standing, based on diagnoses of SLE, chronic back, abdominal, and joint pains, and depression. AR 626. He provided substantially the same opinion in March 2008. AR 624. In February 2009, Dr. Buenvenida found that plaintiff was severely limited in her ability to sit, stand, walk, lift, handle, and carry – as well as in her ability to work overall – based on diagnoses of SLE and rheumatoid arthritis. AR 667. In December 2009, he limited plaintiff to sedentary work based on the same diagnosis and also depression. AR 1354.

Plaintiff argues the ALJ's reasons for rejecting these opinions are insufficient. Again, for

ORDER - 8

the same reasons discussed above, the Court agrees. Thus, while plaintiff may have improved in regard to her respiratory/cardiac symptoms, the ALJ failed to point to evidence of improvement with respect to the actual diagnoses on which Dr. Buenvenida based his opinions. Nor did the ALJ point to any specific evidentiary support for his determination that plaintiff's condition had deteriorated only after May 1, 2009. And even if there is some evidence of symptom stability and control in April 2009, that still leaves the more than two-year period of time prior thereto that Dr. Buenvendia's opinions cover.

      C.      <u>Dr. McDuffee</u>

Based on a psychological evaluation performed in February 2009, Dr. McDuffee opined that plaintiff was severely limited – defined as the "[i]nability to perform one or more basic work-related activities" – in her ability to learn new tasks, relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior. AR 670, 672. Dr. McDuffee also found plaintiff was unlikely to improve sufficiently to return to work. AR 673.

The ALJ gave "little weight" to Dr. McDuffee's opinion, finding it was inconsistent with plaintiff's "longitundinal mental health treatment history."AR 749-50. Specifically, he noted plaintiff "struggled with depression after she was diagnosed with SLE in 2007 and she had some worsening symptoms around 2009, but her symptoms were adequately managed with medication management and (more recently) group therapy." *Id.* The ALJ also found that although Dr. McDuffee "was under the impression that [plaintiff] was socially isolated and spent most of her day in bed," the record indicated that plaintiff "was more active and independent that [sic] she alleged, . . . attend[ing] her appointments and engage[ing] in group therapy with no indication of any problems maintaining her schedule or getting along with others." AR 751.

ORDER - 9

Plaintiff's longitudinal mental health treatment history is sparse, though, and while that can be evidence of an absence of mental health problems, it does not show as the ALJ found that her symptoms were adequately managed during the closed period at issue here. Indeed, the ALJ himself seemed to accept plaintiff's report that she struggled with depression beginning in 2007, and also that her symptoms worsened in 2009. Dr. McDuffee's own observations and clinical findings, furthermore, indicate plaintiff had significant mental health issues prior to May 2009. For example, Dr. McDuffee noted that plaintiff was unable to calculate or to understand and follow complex instructions, and that her performance on psychological testing suggested she was impaired in her ability to learn new information. AR 672. Dr. McDuffee also found plaintiff was "[s]everly impaired" with respect to abstract reasoning. AR 674.

Nor does the record support the ALJ's assertion that plaintiff was more independent and active than alleged. Indeed, it shows plaintiff led a fairly restrictive life, with little in the way of social activity outside of the appointments and group therapy the ALJ mentioned. AR 191-206, 212-220, 230. Further, merely having appointments and going to therapy hardly suggests a lack of difficulty maintaining a schedule or getting along with others on plaintiff's part, particularly in regard to the ability to handle a normal work setting and where the record fails to indicate such activities have been engaged in extensively. The ALJ's stated reasons for rejecting Dr. McDuffee's opinion, therefore, lack validity.

II.     The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at

ORDER - 10

step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found that from March 5, 2007, to April 30, 2009, plaintiff had the RFC to perform sedentary work, with the following additional limitations:

> **She could not engage in overhead reaching. She could frequently reach up to shoulder level. She could frequently handle, finger, and feel. She could occasionally balance, stoop, squat, crouch, crawl, kneel, and climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could not work at heights or in proximity to hazardous conditions. She was capable of attending to and concentrating on simple, repetitive, routine tasks in two-hour increments. She could have superficial incidental contact with the general public. She could have frequent contact with supervisors and coworkers.**

AR 747 (emphasis in the original).

Because the ALJ erred in evaluating the medical evidence in the record, however, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations. As discussed above, Dr. Nelp and Dr. Buenvenida both found plaintiff would be far more restricted in terms of handling and/or manipulation, even to the point of being unable to do so. Dr. McDuffee also found her to be severely limited in several mental functional

ORDER - 11

areas, including the ability to learn new tasks, relate appropriately to co-workers and supervisors, and maintain appropriate behavior, that the ALJ did not adequately account for in the above RFC assessment. Accordingly, the ALJ erred here as well.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

At the most recent hearing, the ALJ found that from March 5, 2007, to April 30, 2009, plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 752-53. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance

ORDER - 12

thereon – cannot be said to be supported by substantial evidence or free of error.[1]

V.      Remand for an Award of Benefits

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Plaintiff argues remand for an award of benefits is warranted based on the functional assessment provided by Dr. McDuffee. Although Dr. McDuffee did find plaintiff to be severely impaired in several mental functional areas – and opined that it was unlikely she would improve sufficiently to return to work – the record contains no vocational expert testimony concerning the impact of any of the specific functional limitations Dr. McDuffee assessed. The Court thus finds the record

---

[1] Plaintiff also argues the ALJ erred in relying on the vocational expert's testimony concerning the actual number of jobs that exist in the national economy. But because as discussed below an award of benefits is warranted based on the errors the ALJ committed in regard to the medical evidence in the record, the Court finds it unnecessary to reach this issue and therefore declines to do so.

ORDER - 13

has not been sufficiently developed on this issue to warrant an award of benefits.

On the other hand, the Court agrees with plaintiff that the record has been sufficiently developed with respect to plaintiff's physical limitations, particularly in regard to her ability to handle and/or manipulate, or rather lack thereof. As plaintiff points out, the vocational expert at the most recent hearing testified that for an individual who had the same age, education, and work experience as plaintiff – and who had the same RFC as plaintiff but was limited to handling and fingering on a less than frequent basis – there would not be any jobs existing in the national economy that such an individual could do. AR 770-71.

Because as discussed above, the weight of the medical evidence in the record supports a finding that plaintiff's ability to handle and/or manipulate was at less than a frequent level –and likely significantly less than that – there are no jobs existing in the national economy she could do, and therefore she should have been found to be disabled. An award of benefits for the closed period at issue here is thus warranted on this basis.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for an award of benefits in accordance with the findings herein.

DATED this 19th day of October, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14